No. 3628

*Second Circuit*

---

## NEILSON v. LINCOLN PARISH SCHOOL BOARD

---

(December 31, 1929.   Opinion and Decree.)

---

J. W. Elder, of Ruston, attorney for plaintiff, appellant.

Wm. J. Hammon, of Jonesboro, attorney for defendant, appellee.

ODOM, J. On July 5, 1928, plaintiff was employed by the Lincoln parish school board as teacher for the Cypress school, a rural public school in that parish, for a term of nine months, at $75 per month, payable monthly. She and the board, represented by the superintendent, signed a contract in the usual form, and she began her work on September 3, and continued to teach for about six weeks.

On October 2, the board, in regular session, ordered the Cypress school closed and arranged to have the children of that community transferred to the public school at Ruston.

Plaintiff was notified of the action of the board by the superintendent in a letter dated October 2nd, and in the same letter she was ordered to close the school and to return all records to the office of the board. She reported at the schoolhouse for duty on the following Monday morning, but no pupils appeared, as the board in the meantime had arranged to transport the children to Ruston by truck. The board paid plaintiff's salary for two months, but refused to make further payments. The present suit is against the board to collect the remaining seven months' salary, amounting to $525. She alleges that the board discharged her without right or authority "and refused to give her another school, and that her entire contract has become due and demandable."

The board, in answer, admitted the employment of plaintiff, as alleged, but denied liability, setting up as a defense that plaintiff was not discharged, but that under the law it became necessary to close the school, due to the fact that an average attendance of 10 pupils had not been maintained, and that plaintiff accepted employment with full knowledge that the board could not, under the law, open or maintain a public school unless an average attendance of 10 could be maintained, and with knowledge that, unless such average could be maintained, the school would be closed and her contract ipso facto terminated, and that she accepted employment on those conditions.

Plaintiff's demands were rejected, and she prosecutes this appeal.

## OPINION

Cypress school is in a rural section of Lincoln parish, and it seems that prior to the meeting of the board in July, when schools were established and teachers appointed, there was some objection on the part of some of the citizens to the opening of a school there, due to the fact that it was probable that the required attendance could not be secured. Anticipating such opposition, plaintiff, who lived in that community, and some of her friends, who wanted the school established, went before the superintendent to discuss the matter of opening the school. Mrs. Neilson says that "we came down and talked to Mr. Campbell (the superintendent of schools) about the possibility of retaining the school there." She testified that she was familiar with conditions which prevailed in the community, and the difficulty of maintaining an average. She was asked if she was familiar with the school laws governing public schools, and she answered that she was, and, on being asked if she knew that it was necessary under the law to have

an average attendance of 10 in order to maintain the school she said, "I knew the law had such provisions, but I didn't think it compulsory."

Some three weeks after beginning her work, plaintiff went to Ruston and saw the superintendent, who told her that complaints had come up to him that the proper average was not being maintained, and that, unless conditions in that respect were improved, the board would probably close the school at its next regular meeting, and urged her to use her best efforts to get the average up to 10, as required by law. She sent in her report for the first month, showing an average of less than 10, and on that showing the board ordered the school closed. Plaintiff was asked if she knew the reason for closing the school, and she answered: "No, sir, but I thought I did. I knew through what influence closed it." She was further asked, "You knew that, it was because the required number of children were not present and enrolled in school, didn't you?" And she answered, "No; I just imagined that was it."

The record establishes beyond question that plaintiff was thoroughly familiar with the conditions which prevailed in the community, and that it was very questionable whether the school could be maintained, and knew further that, if the average was not made the school would be closed and her further services dispensed with, and she says that she knew the law to be that the board could not continue the school without the proper average. Plaintiff knew that her employment for a full nine months' term as teacher in the Cypress school was conditional; that, if the school could not be maintained under the law, her contract would be at an end.

Counsel for plaintiff calls attention to the fact that the written document evidencing the board's obligation to pay her salary for nine months contains no stipulation that, in case it became necessary to close the school, the contract should be at an end. Even so, this was, nevertheless, a contract with a resolutory condition, to the knowledge of plaintiff. Civil Code, art. 2021.

Conditions in contracts are either express or implied.

"They are express, when they appear in the contract; they are implied, whenever they result from the operation of law, from the nature of the contract, or from the presumed intent of the parties." Civil Code, art. 2026.

The condition in the contract under consideration, though not express, was implied, first, as a result of the operation of the law; and, second, from the intent of the parties. This was a contract of which the condition formed a part. The condition implied in the contract and well understood by both parties was that the employment should continue if the school continued. This contract, as well as all others of its kind, was made with reference to the public school law in force at the time. The rule universally recognized is that, where a contract is entered into pursuant to a certain law, the law enters into the contract and becomes a part of it as though it were referred to or expressed therein. 13 C. J. 560, sec. 523; 9 Cyc. 582; State vs. Sullivan, 12 La. Ann. 720; In re Hingle, 124 La. 655, 50 So. 616; Ehret vs. Police Jury, 136 La. 391, 67 So. 176.

Under Act No. 100, p. 204, of 1922, the law in force at the time this contract was

entered into, parish school boards are not permitted to open or maintain schools in any locality unless an average attendance of 10 can be maintained. This law must be read into the contract. Construing the contract with reference to the law, with which, as we have said, plaintiff was thoroughly familiar, we must hold that her employment for nine months was conditioned upon the board's ability to keep the school open for that long. Plaintiff's records for the first month showed that the school had fallen short of that average. The school could not, therefore, be legally kept open. The board being prohibited by law from maintaining the school, the contract which it had made with plaintiff became one which was impossible for it to fulfill.

"Every condition of a thing impossible or contra bonos mores (repugnant to moral conduct) or prohibited by law, is null, and renders void the agreement which depends on it." Civil Code, art. 2031.

The impossibility of keeping the school open under the law, where an average of 10 could not be maintained, was known to both plaintiff and defendant. Hence we conclude that the parties intended that the contract should continue only so long as the board could, under the law, keep the school open.

The judgment appealed from is correct, and is accordingly affirmed, with costs in both courts.